IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASIS INTERNET SERVICES, a California corporation, and JOEL HOUSEHOLTER, d/b/a KNEEL AND ENGINEERING, d/b/a FOGGY.NET,<br><br>Plaintiffs,<br><br>v.<br><br>CONSUMERBARGAINGIVEAWAYS, LLC, an Illinois Limited Liability Company, d/b/a OPINIONRESEARCHPANEL a/k/a OPINIONRESEARCHPANEL.COM, CONSUMER REVIEW NETWORK, LLC, a Delaware Limited Liability Company, d/b/a CONSUMERREVIEWNETWORK.COM, DIRECTGIFTCARDPROMOTIONS, LLC, an Illinois Limited Liability Company, d/b/a LAPTOPREVIEWPANEL, a/k/a LAPTOPREVIEWPANEL.COM, JEFF M. ZWEBEN, and DOES ONE through FIFTY, inclusive,<br><br>Defendants. | No. C 08-04856 WHA<br><br>**ORDER RE RULE 12 MOTION** |

**INTRODUCTION**

Plaintiffs bring this action under California's law defining unlawful activities relating to commercial email advertisements. Providers of internet and email services allege that defendants sent nearly one thousand unsolicited and misleading advertisements to email addresses serviced by them. They seek statutory damages. Defendants move to dismiss on multiple grounds including federal preemption, timeliness and standing. For the reasons that follow, defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

**STATEMENT**

Plaintiffs Asis Internet Services, a California corporation located in Garberville, and Joel Householter d/b/a Foggy.net, a California sole proprietorship located in Eureka, have sued Consumerbargaingiveaways, Consumer Review Network, and Directgiftcardpromotions, all Illinois or Delaware limited liability corporations, asserting violations of a California law proscribing certain unlawful activities relating to commercial email advertisements. Cal. Bus. & Prof. Code § 17529.5. For the purposes of this motion, the following well-pled allegations are taken as true.

Plaintiffs Asis and Foggy both provide internet and email service. At the hearing, they explained that they provide dial-up internet service to a relatively small customer base in rural or remote areas where high-speed services such as DSL and cable are unavailable. Declarations attached to their briefing indicate that they have been in business since 1995 and 1998, respectively, and that they have 950 and 75 customers, respectively. Plaintiffs allege that, between August 22, 2007, and September 28, 2008, defendants advertised in hundreds of email promotions sent to their computers that either (a) contained falsified header information, or (b) contained a subject line that would be likely to mislead a recipient. Defendants allegedly advertised in 597 such emails sent to Asis' computers and 331 such emails sent to Foggy's computers.

The crux of the allegations is that defendants sent email advertisements with subject lines suggesting a free gift or prize. In fact the gifts were not free because the recipient had to, for example, make a purchase or open a new credit card in order to receive them. The actual requirements for participation were buried at the end of the email or on a separate internet page accessible only after the recipient provided certain personal information. Moreover, the email headers were falsified in order to conceal or misrepresent who the messages were actually from. More specifically, plaintiffs allege the following.

**1. SUBJECT-LINE INFORMATION.**

Plaintiffs allege that the emails contained subject lines that would be likely to mislead a recipient about a material fact of the contents of the message. The emails' subject lines

contained statements such as "Your JCPenny 500 USD Gift Card!"; or "CONFIRMATION: We have your $100 Visa Gift Card ready to ship!"; or "[QUAR] You were chosen to receive a $500 JCPenney Gift Card!"; or "[QUAR] Your $500 JC Penney Holiday Gift Card Expiring Soon" (Compl. ¶ 22).[1] These subject lines were allegedly intended to coax recipients to open the email by enticing them with free gifts. Plaintiffs allege, however, that the "free" gifts came with strings attached and the actual terms of the offer and requirements for participation were buried on the second page (in only summary form) or were not included in the email at all.

To view the full terms and conditions, recipients were required to click on a link to another internet page, where they were required to provide their email address before being given an opportunity to review the terms and conditions of, and the privacy policies attached to, the free gifts. After entering that information, recipients were taken to a second page where they were required to enter detailed personal information and told that, in order to receive the free gift, they had to undertake other steps including, for example, completing a registration and/or activating a new credit card either by making a purchase, transferring a balance or taking a cash advance. Plaintiffs allege that the subject lines were therefore likely to mislead recipients.

### 2. HEADER INFORMATION.

Plaintiffs also allege that the emails' headers contained information that was falsified, misrepresented or forged in order to conceal the true identities of the senders. The complaint avers that the vast majority (891 of the 928) of the email messages contained headers with allegedly false "from" names that were similar to the names or email accounts of the email *recipients*. The "sender ID" field of the headers was also allegedly false — it contained a different email address, one allegedly stolen or that did not exist. For example, one email allegedly sent *to* "'catskinner' <catskinner@asis.com>" indicated that it was *from* "'catskinner@asis.com' <mejnryhopw@amazon.com>" (Compl. Exh. F).

Moreover, the IP addresses in all but one of the email headers indicated that the emails were sent from a Verizon Internet IP address (the final one contained an IP address from

---

[1] "[QUAR]" appears in the pleading and is unexplained.

3

PenTeleData, Inc., a provider of DSL). In other words, plaintiffs allege that, under scrutiny, the emails now appear to have come from *consumer* IP addresses, but the sending domain names indicated to recipients that the emails were instead from well-known companies such as "Dell.com" or "sun.com" or "microsoft.com" or "google.com." These companies, however, had (and have) their own IP address blocks that do not coincide with the Verizon or PenTeleData blocks. Therefore, plaintiffs allege, the "sending" email accounts were either stolen or forged and the true sender of the emails cannot be identified by the header information.

\* \* \*

Plaintiffs aver that various aspects of these email advertisements evidenced an intent to deceive: concealing the actual sender's name and email address; utilizing stolen domain names; burying the offer notification on the second page of the emails; omitting the full terms and conditions from the emails themselves; and sending the same misrepresentations to multiple email accounts.

Plaintiffs filed this lawsuit in October 2008 and amended the complaint in December 2008. They assert one claim for violations of California's law defining unlawful activities relating to commercial email advertisements. Cal. Bus. & Prof. Code § 17529.5. They seek liquidated damages under Section 17529.5(b)(1)(B)(ii) in the amount of $1,000 for each unsolicited commercial email which violated these provisions, as well as attorney's fees. Defendants now move to dismiss.[2]

**ANALYSIS**

Plaintiffs sue under Section 17529.5(a), which provides (emphasis added):

> (a) It is unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances:

---

[2] Unless otherwise stated, all references to "complaint" or citations to "compl." are to the first amended complaint. The complaint named Jeff M. Zweben as a defendant, and defendants' motion addressed the claims against him, but plaintiffs subsequently stipulated to dismissal of Mr. Zweben from this action without prejudice. Defendants' contentions regarding Mr. Zweben are therefore moot.

4

>  (1) The e-mail advertisement contains or is accompanied by a third-party's domain name without the permission of the third party.
>
>  (2) The e-mail advertisement contains or is accompanied by *falsified, misrepresented, or forged header information* . . . .
>
>  (3) The e-mail advertisement has a *subject line* that a person knows would be *likely to mislead a recipient*, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

Defendants move to dismiss on the grounds that (1) plaintiffs lack standing; (2) plaintiffs' Section 17529.5 claims are preempted by the federal Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM Act"); and that (3) the claims are barred in part by the applicable state statute of limitations. Defendants also move for (4) a more definite statement under Rule 12(e), arguing that the allegations are too vague and ambiguous.[3]

### 1. PLAINTIFF HAS STANDING.

Defendants contend that "plaintiffs lack standing to bring a claim under Section 17529.5." Defendants' contentions are not entirely clear, but their briefing might be read to argue that plaintiffs lack Article III standing and/or that Section 17529.5 creates no private cause of action for plaintiffs.

Defendants' Article III argument is without merit. Plaintiffs, as email service providers, clearly have an interest in protecting their customers from false advertisements and attempted fraud. In the analogous federal CAN-SPAM Act, Congress specifically concluded that spam injures internet service providers: "[t]he growth in unsolicited commercial electronic mail imposes significant monetary costs on providers of Internet access services, businesses, and educational and nonprofit institutions that carry and receive such mail . . . ." 15 U.S.C. 7701(a)(6). This is not a CAN-SPAM case, of course, but for *Article III* purposes the point is the same. Plaintiffs, as internet service providers, certainly suffer Article III injury from false or misleading advertising in spam email messages: spam annoys their customers,

---

[3] Although defendants mentioned Proposition 64 at the hearing, they did not raise a Proposition 64 argument in their motion.

5

thus hurting business, and forces them to expend resources to filter and combat the spam. Here, plaintiffs have specifically alleged such injury — they aver, for example, that as internet service providers they expend approximately $3,000 and $1,200 per month, respectively, to process and fight spam. Insofar as defendants raise an Article III argument, it is unavailing.

Plaintiffs, moreover, certainly have a claim under California's statute governing commercial email advertisements. Section 17529.5(b)(1)(A) delineates who may sue under the provision (emphasis added):

> the following may bring an action against a person or entity that violates any provision of this section:
>
> (i) The Attorney General.
>
> (ii) *An electronic mail service provider.*
>
> (iii) A recipient of an unsolicited commercial e-mail advertisement, as defined in Section 17529.1.

Plaintiffs bring this lawsuit as electronic mail service providers. Therefore, insofar as defendants contend that plaintiffs have no claim under the provision, they are mistaken. Defendants further insist that plaintiffs failed adequately to plead that they *are* in fact email service providers or that they were acting in that capacity when they received the emails. They claim that some of the email addresses that received the emails are were not actually used by customers or that Asis and Foggy were really just sites to collect emails for litigation.[4]

Asis and Foggy have alleged, albeit in somewhat conclusory fashion, that they provide internet and email service and received the emails at issue while providing such services. In declarations, plaintiffs further explain that Asis and Foggy have been in business since 1995 and 1998, respectively; that they have 950 and 75 customers, respectively, and approximately 1,500 and 180 email accounts, respectively; and that they expend approximately $3,000 and $1,200 per month, respectively, to process spam. Plaintiffs request the opportunity to amend in order to include these allegations in the complaint if need be. Leave to amend will be granted.

---

[4] Defendants' arguments that plaintiffs were not "recipients" under Section 17529.5, or that plaintiffs lack standing under the *federal* CAN-SPAM, are irrelevant because plaintiffs' claims are based on their alleged status as email service providers under state law.

6

Implausible allegations of internet service provider activity or bare conclusions, alone, may not suffice, but (with the statements in their declarations) plaintiffs have provided more. Defendants arguments are essentially factual challenges; defendants provide no authority suggesting that plaintiffs must, at the pleading stage, allege some specific threshold degree of internet service provider activity in order to survive a motion to dismiss. *See ASIS Internet Services v. Active Response Group*, 2008 WL 2952809 at *6 & n.4 (N.D. Cal. 2008) (discussing analogous pleading issues in the context of a federal CAN-SPAM claim).

### 2. FEDERAL PREEMPTION.

The federal CAN-SPAM Act expressly preempts certain state-law claims while expressly exempting others from preemption via a "savings" clause:

> This chapter supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, *except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto*.

15 U.S.C. 7707(b)(1) (emphasis added). Thus, although this provision broadly preempts state laws governing commercial email, it expressly "saves" from preemption state laws that "prohibit[] *falsity or deception*" in commercial email messages. The issue is whether California's Section 17529.5(a) "prohibits falsity or deception," in which case plaintiffs' claims are saved from preemption.

As stated, plaintiffs' claims arise under California's Section 17529.5(a). For the purposes of this motion, the meaning of this statute is not in dispute. To reiterate, Section 17529.5(a) provides:

> (a) It is unlawful for any person or entity to advertise in a commercial e-mail advertisement . . . under any of the following circumstances:
>
> \* \* \*
>
> (2) The e-mail advertisement contains or is accompanied by *falsified, misrepresented, or forged header information* . . . .
>
> (3) The e-mail advertisement has a *subject line* that a person knows would be *likely to mislead a recipient*, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

7

True, California courts have yet to decide the precise scope of these provisions.[5] For present purposes, however, it is sufficient that the statute's prohibitions are broader than common-law fraud — a matter on which both sides agree. Defendant's preemption argument is as follows: the CAN-SPAM Act's preemption provision saves from preemption only state laws that prohibit "falsity or deception;" the phrase "falsity or deception" in the savings clause refers only to common-law fraud; therefore, for a state claim to escape preemption the state law must require (or the claim must satisfy) *all* elements of common-law fraud. That is, under defendant's theory, the phrase "falsity or deception" in the savings clause actually means common-law fraud. Both sides agree that California's Section 17529.5(a) and plaintiff's claims thereunder would not satisfy that standard. Section 17529.5(a) does not, for example, purport to require reliance or actual damages, and plaintiffs essentially concede that they would be unable to establish reliance.

Plaintiffs dispute the entire premise of the attack. They argue that the phrase "falsity or deception" in the savings clause encompasses not only common-law fraud claims but also false-advertising claims with different elements. Section 17529.5 proscribes not only fraudulent statements on which a plaintiff *actually* relied to his or her detriment but also advertisements that are "*likely to mislead a recipient*." Although California courts have yet to interpret the provision, under the analogous FTC Act, "[a]n act or practice is deceptive if first, there is a representation, omission, or practice that, second, is *likely to mislead* consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material. Deception may be found based on the 'net impression' created by a representation." *F.T.C. v. Stefanchik*, 2009 WL 636510 at *3–4 (9th Cir. 2009) (emphasis added; citations omitted). Actual reliance and injury are not required.[6] Plaintiffs argue that the

---

[5] The Ninth Circuit recently certified to the California Supreme Court the meaning of "falsified, misrepresented, or forged" under Section 17529.5(a)(2). *Kleffman v. Vonage Holdings Corp.*, 551 F.3d 847, 848 (9th Cir. 2008). The California Supreme Court has yet to answer.

[6] *See, e.g.*, *Freeman v. Time, Inc.*, 68 F.3d 285, 288–890 (9th Cir. 1995); *F.T.C. v. Direct Marketing Concepts*, 569 F. Supp. 2d 285, 297–98 (D. Mass. 2008) (both further discussing the FTC Act standards).

8

phrase "falsity or deception" in the CAN-SPAM Act's savings clause encompasses such false-advertising claims.

No appellate decision has yet decided whether, as defendants argue, the phrase "falsity or deception" must be narrowed to common-law fraud such that the CAN-SPAM Act saves from preemption only state claims sounding in fraud. District courts to have addressed the issue have reached differing results.[7]

This order rejects the preemption challenge. The text and structure of the provision indicate that defendants interpret the savings clause too narrowly: "falsity or deception" is not limited *just* to common-law fraud and other similar torts. Statutory interpretation begins with the text of the statute. On its own terms, the savings clause exempts from preemption not only "fraud" claims but rather laws that proscribe "falsity or deception" in email advertisements. The Act does not define the words "falsity" and "deception." Congress, however, is certainly familiar with the word "fraud" and choose not to use it; the words "falsity *or* deception" suggest broader application. In fact, as plaintiffs emphasize, Congress utilized the word "fraud" in the very next subsection but not in the savings clause. *See* 15 U.S.C. 7707(b)(2).

The structure of the Act also indicates that the phrase "falsity or deception" does not refer *just* to common-law fraud. The CAN-SPAM Act refers to falsity and deception not only in its preemption provision but also in its substantive provisions governing commercial electronic mail.[8] One of those provisions expressly directs that the word "deceptive," for its part, should be understood not as referencing common-law fraud (nor the *tort* of deception) but rather deception as utilized in the FTC Act. U.S.C. 7704(a)(2) (prohibition on "deceptive subject headings" therein should be understood "consistent with the criteria used in enforcement of section 45 of this title [*i.e.*, the FTC Act]"). A word used in different places

---

[7] *Compare Gordon v. Virtumundo, Inc.*, 2007 WL 1459395 (W.D. Wash. 2007) (declining to limit the savings clause only to fraud claims); *Beyond Systems, Inc. v. Keynetics, Inc.*, 422 F. Supp. 2d 523, (D. Md. 2006) (same); *Gordon v. Impulse Marketing Group*, 375 F. Supp. 2d 1040 (E.D. Wash. 2005) (same); *with Kleffman v. Vonage Holdings Corp.*, 2007 WL 1518650, *3 (C.D. Cal. 2007) ("[t]hough Congress did not define the terms 'falsity' or 'deception,' it is clear that it meant these terms to refer to traditional, tort-type concepts"); *Hoang v. Reunion.Com*, 2008 WL 4542418, *2 (N.D. Cal. 2008) (similar); *Hoang v. Reunion.com*, 2008 WL 5423226 (N.D. Cal. 2008) (similar).

[8] *See* 15 U.S.C. 7704(a)(1) (setting forth a "[p]rohibition of false or misleading transmission information"); (a)(2) (setting forth a "[p]rohibition of deceptive subject headings").

9

**United States District Court**
For the Northern District of California

1   within the same statute is generally given a consistent meaning.⁹ In fact, the section containing
2   the preemption provision itself similarly references the FTC Act: "[n]othing in this chapter
3   shall be construed to affect in any way the Commission's authority to bring enforcement
4   actions under FTC Act for materially *false or deceptive representations* or unfair practices in
5   commercial electronic mail messages." 15 U.S.C. 7707(a)(2). The subsection immediately
6   thereafter contains the savings clause here at issue. The CAN-SPAM Act's repeated
7   references to the FTC Act definition of "deceptive" practices strongly suggest that Congress
8   intended the phrase "falsity or deception" in Section 7707(b)(1) to refer to, or at least
9   encompass, that definition, not *just* state tort law.

10   Admittedly, some decisions lend support to defendants' proposition. Defendants rely
11   on the only appellate decision to have addressed the scope of CAN-SPAM's preemption
12   provision. *Omega World Travel v. Mummagraphics*, 469 F.3d 348, 349 (4th Cir. 2006). Most
13   or all of the district court decisions that have equated "falsity or deception" with fraud have
14   relied on this decision (*see* note 5 above). *Omega*, however, merely held that state laws were
15   preempted insofar as they permitted claims for *immaterial* errors. *Id*. at 353–54. It did not
16   hold, at least not expressly, that *all* elements of common-law fraud were required or that any
17   particular element other than materiality was required to survive preemption. False advertising
18   claims (at least under the FTC Act) also require materiality, and plaintiff has pled materiality
19   (Compl. ¶¶ 11–18, 21–22).

20   Granted, as defendants emphasize, *Omega* did look to tort law for its materiality
21   requirement:

22   > while "falsity" can be defined as merely "the character or quality
23   > of not conforming to the truth or facts," it also can convey an
24   > element of tortiousness or wrongfulness, as in "deceitfulness,
25   > untrustworthiness, faithlessness." . . . . Here, the pre-emption
26   > clause links "falsity" with "deception"-one of the several tort
27   > actions based upon misrepresentations [citing, *inter alia,* tort of
28   > "deceit," Restatement (Second) of Torts § 525]. *This pairing
29   > suggests that Congress was operating in the vein of tort when it*

---

⁹ *See, e.g.*, *Household Credit Services, Inc. v. Pfennig*, 541 U.S. 232, 239 (2004); *Gonzalez v. Oregon*, 546 U.S. 243, 273 (2006) ("statutes should not be read as a series of unrelated and isolated provisions"). *See also* FTC Notice of Proposed Rulemaking, 69 FR 50091-01 at 50095 & n.32 (Aug. 13, 2004) ("CAN-SPAM specifically applies to the subject line of covered email messages the deception jurisprudence the Commission has developed under § 5(a) of the FTC Act").

10

> *drafted the pre-emption clause's exceptions*, and intended falsity to refer to other torts involving misrepresentations, rather than to sweep up errors that do not sound in tort.

469 F.3d at 354 (emphasis added). District courts limiting the savings clause to fraud claims have generally relied on this passage. This order disagrees. The savings clause refers to "falsity or deception." This order finds no reason to define *deception* differently from how it is used in other subsections of the CAN-SPAM Act such as Sections 7704(a)(2) and 7707(a)(2). Nor do *Omega's* policy rationales for the materiality requirement extend to all elements of fraud. The decision found it inconsistent with congressional intent to allow states to proscribe otherwise innocent actions which may create a patchwork of state standards and excessively inhibit the use of commercial email. *Id*. at 355–56. Such concerns are inapplicable, however, to conduct proscribed by other national laws — as the below-discussed legislative history recognized. In all respects, this order declines to interpret "falsity or deception" *only* in accordance with state tort law.

Defendants also point to legislative history in support of their fraud requirement. The report of the Senate's Committee on Commerce, Science and Transportation described CAN-SPAM's preemption provision as follows:

> Thus, a State law requiring some or all commercial e-mail to carry specific types of labels, or to follow a certain format or contain specified content, would be preempted. By contrast, a State law *prohibiting fraudulent or deceptive headers*, subject lines, or content in commercial e-mail would not be preempted. Given the inherently interstate nature of e-mail communications, the Committee believes that this bill's creation of one national standard is a proper exercise of the Congress's power to regulate interstate commerce . . . . This is particularly true because, in contrast to telephone numbers, e-mail addresses do not reveal the State where the holder is located. As a result, a sender of e-mail has no easy way to determine with which State law to comply. Statutes that prohibit *fraud and deception* in e-mail do not raise the same concern, because they target behavior that a legitimate business trying to comply with relevant laws would not be engaging in anyway.

Senate Rpt. No. 108-102, 108th Cong., 1st Sess. 2003, 2003 WL 21680759 (emphasis added). True, the report referred to "*fraudulent* or deceptive" conduct rather than "falsity or deception." Although this arguably suggested that the Senate intended to equate "falsity" with "fraud," as some district courts have suggested, it does not account for the additional reference

11

(in the disjunctive) to "deception." Nor do the report's policy concerns necessitate limiting the phrase to fraud alone: a "legitimate business trying to comply with relevant laws" would not be engaged in "deceptive" practices in contravention of the FTC Act or state law.

For these reasons, this order will not confine the phrase "falsity or deception" to strict common-law fraud such that anti-deception state actions not insisting on every element of common-law fraud are preempted. Plaintiffs' claims are not preempted merely because the complaint fails to plead, or Section 17529.5 fails to require, reliance and/or damages. Defendants' motion to dismiss the complaint on preemption grounds is denied.[10]

### 3. STATUTE OF LIMITATIONS.

As both sides agree, this case is subject to a one-year statute of limitations applicable to actions brought for statutory penalties. Cal. Civ. Proc. Code § 340(a). The complaint alleges that the emails at issue were received between August 22, 2007, and September 28, 2008. Plaintiffs filed the original complaint (later amended) October 23, 2008. The limitations period, to the extent applicable, would limit plaintiff's claims to those emails received within one year of that date.[11]

Plaintiffs seek refuge in the "discovery rule." In cases involving latent injuries: "courts have routinely applied the so-called discovery rule to toll the running of the statute of limitations. When the discovery rule applies, the plaintiff's [claim] does not accrue on the date the tortious act occurred but rather on the date the plaintiff discovers, or reasonably should have discovered, both the injury and its cause." *Wagner v. Apex Marine Ship Management Corp.*, 83 Cal. App. 4th 1444, 1449 (2000). Although the rule is ordinarily applied in tort cases, it has been applied to claims arguably analogous to those here at issue — including defamation and, on occasion, unfair competition claims.[12] Even assuming the rule applies, however, plaintiffs offer no persuasive reason why the messages could not reasonably have

---

[10] This order, therefore, need not address plaintiffs' alternate contention that the complaint *does* in fact adequately plead the elements of fraud under Rule 9(b).

[11] Contrary to plaintiffs' assertion, the complaint was *filed* October 23, although it was dated October 17.

[12] *Burdette v. Carrier Corp.*, 158 Cal. App. 4th 1668, 1679 (2008) (defamation); *Grisham v. Philip Morris U.S.A.*, 40 Cal. 4th 623, 634 n.7 (2007) (rule has been applied to unfair competition claims, albeit inconsistently).

12

been discovered within one year. Plaintiffs argue that discovery of the emails "required collection, processing, and detailed investigations by experienced technicians" and that "[p]laintiffs' investigators are prepared to declare that the emails were not discovered until September 2008" (Opp. at 24–25). Plaintiffs are prepared to amend the complaint accordingly.

Under the rule, plaintiffs must establish not only that the emails *were* discovered within one year but that they should not reasonably have been discovered earlier. Plaintiffs fail to make such a showing. Therefore, defendants' motion to dismiss in part on this basis is granted. As explained below, however, plaintiffs may bring a motion seeking leave to amend. The motion must specifically point out how the new pleading would overcome these deficiencies.

### 4. RULE 12(E).

Finally, defendants move for a more definite statement under Rule 12(e). Defendants contend that plaintiffs should be required actually to provide the emails at issue, or at least to provide certain basic information for each: the precise number of emails sent within the limitations period; the precise manner in which each allegedly violated the law and the factual basis for the claim; facts regarding which emails were sent by or on behalf of which defendant; whether any of the emails were merely copies; and the specific email addresses to which each was allegedly sent.

At least one court has granted a Rule 12(e) motion seeking similar information. *Gordon v. Ascentive*, 2007 WL 1795334, at *5–6 (E.D. Wash. 2007). The decision required the plaintiff to provide in the pleadings: "1) The address to which it was sent; 2) The date on which it was sent; 3) The basis upon which the Plaintiff claims it violates a statute; and 4) The basis upon which the Plaintiff claims the Defendants sent it." *Ibid*. It reasoned that, without this information, the plaintiffs could not know whether they should "admit" or "deny" sending the emails at issue in a responsive pleading. It further reasoned that "[e]ven if the Defendants have been provided with the emails through discovery, a more definite statement is necessary to prevent the Plaintiff from presenting a moving target." *Id*. at *6.

13

This order agrees that the complaint fails to satisfy Rule 9(b). The complaint specifies the number of emails at issue and the time frame in which they were sent, but beyond that it provides only general allegations and a few examples of the allegedly misleading advertisements. This order declines to require plaintiff actually to attach each email; such a requirement could create a prohibitive burden. Also, plaintiff need not include in the pleading each email address to which the advertisements were sent — that information can be readily obtained in discovery under a protective agreement, to alleviate privacy concerns. Plaintiff must, however, provide more than general allegations regarding the false advertisements and examples. At the hearing plaintiff indicated that the false advertisements fall into categories — *i.e.*, that a discrete number of scams or false-advertisement templates were utilized. To satisfy the particularity requirement, the complaint must provide, at a minimum, the specifics regarding (including an example of) each type of allegedly false or misleading advertisement, the number of those advertisements and the date ranges of the emails in each category. Defendants' motion for a more definite statement is therefore granted.

## CONCLUSION

For all of the above-stated reasons, defendant's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted as to those emails received more than one year prior to the filing of this lawsuit, because the pleading and briefing to date fail to establish that those emails could not reasonably have been discovered earlier. As explained, plaintiffs also should plead the facts indicating that they are internet service providers. The motion is in all other respects **DENIED**. The motion for a more definite statement is **GRANTED**, for the above-stated reasons. Plaintiff may move for leave to amend by **MAY 7, 2009**. Any such motion should be accompanied by a proposed pleading and the motion should explain why the foregoing problems are overcome by the proposed pleading. Plaintiff must plead its best case. Failing such a motion, all inadequately pled claims will be dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: April 17, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

14